IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–01640–CNS–MDB

DANIEL P. RICHARDS, a resident of the State of Washington,

    Plaintiff,

v.

LOCKHEED MARTIN CORPORATION d/b/a LOCKHEED MARTIN SPACE, a corporation headquartered and organized under the laws of the State of Maryland,

    Defendant.

# ORDER

This matter is before the Court in connection with its recently issued Order to Show Cause. (Doc. No. 44.) In it, the Court briefly recited the issues that have plagued this case from its inception. For example, Plaintiff initially failed to serve Lockheed Martin within ninety days, and then later by the Court-imposed extended deadline. (*Id.* at 1.) Those missteps, however, were attributable—at least in part—to Plaintiff's *pro se* status.

On December 27, 2022, Plaintiff submitted a declaration signed by Mr. John M. Pierce, of John Pierce Law, in which Mr. Pierce stated he was retained to represent Plaintiff in this action. (*See* Doc. No. 16.) Defendant was eventually served and thereafter the case appeared to be on track.

However, on February 2, 2023, Defendant moved to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), arguing first that Plaintiff's

ADA and CADA claims are time-barred for failure to timely exhaust administrative remedies, second that the Complaint is devoid of requisite factual allegations, and third that the Complaint fails to satisfy the notice pleading standard. (*See* Doc. No. 20.)

Rather than respond to Defendant's Motion to Dismiss, Plaintiff purported to file an amended complaint on February 27, 2023. However, the filing did not comply with the applicable rules and the Court struck the amended complaint, granting Plaintiff up to and including March 20, 2023, to either respond to Defendant's Motion to Dismiss or file an amended complaint that complied with the Local Rules. (*See* Doc. Nos. 23, 24.) Plaintiff failed to meet the Court's deadline.

On April 4, 2023, Ms. Aszanneé R. Laws, an attorney once affiliated with Mr. Pierce's firm, entered her appearance on behalf of Plaintiff. (Doc. No. 26.) That same day, Ms. Laws filed a Notice of Motion and Motion for Leave to Amend to File First Amended Complaint and Plaintiff Daniel Richards' Notice of First Amended Complaint. (Doc. Nos. 27, 27-1.) The Court denied the motion for failure to comply with applicable rules. (Doc. No. 29.) After the Court rejected that effort to amend, and after Plaintiff conferred with Defendant, he filed another motion to amend. (Doc. No. 30.)

Concerned about the posture of the case and the potential prejudice to the parties, the Court decided to hold a scheduling conference for a meaningful discussion about scheduling and other issues. That conference occurred on May 10, 2023. (Doc. No. 38.) Because the pending Motion to Amend (Doc. No. 30) was fully briefed, and because Plaintiff had made prior attempts to amend, the Court sought to address the Motion to Amend at that conference. (*Id.*) Appearing on behalf of Plaintiff, Ms. Laws represented to the Court that she was not prepared to address the

request to amend. This, despite the fact that Plaintiff had—for months—attempted to file an amended complaint, and despite the fact that Ms. Laws was the only attorney of record for Plaintiff at that time. The Court expressed serious concern about Ms. Laws' lack of preparedness and the history of missteps and failure to comply with Court rules. The Court warned Ms. Laws about the complexities of federal court practice and the seriousness of failing to prepare, comply with Court orders, or comply with applicable rules. (*Id.*) Ms. Laws represented that despite being the only attorney of record for Plaintiff, she was not lead on this case. (*Id.*) The Court decided to give Ms. Laws and Mr. Pierce's firm more time by setting a separate hearing on the Motion to Amend. (Doc. No. 37.)

The day of the hearing—June 6, 2023—Ms. Laws submitted the following statement to this Court:

> …counsel for Plaintiff Daniel Richards ("Richards") is at a Los Angeles Urgent Care facility with a medical emergency. Ms. Laws is not able to appear at Mr. Richards['] Motions hearing as she has severe respiratory symptoms including a persistent cough that makes it impossible for her to complete the hearing without severe coughing fits and rib pain. Additionally, the attorney that was supposed to be taking over for Ms. Laws is still in the process of being admitted and for that reason cannot appear on her behalf.

(Doc. No. 41.) The Court received the statement while in the hearing with Defendant, at which point the Court had no choice but to adjourn and reset.

Following that hearing, the Court issued the Order to Show Cause. (Doc. No. 44.) In it, the Court ordered Ms. Laws and Mr. Pierce to provide a detailed response as to why they should not be sanctioned, and it ordered them to submit proof of any purported ailments or hospitalizations. (*Id.*) Both attorneys submitted a response, and both were appropriately apologetic and remorseful. But their conduct cannot be without consequence.

3

This action has been pending for over a year, a motion to dismiss is pending without a response, and Plaintiff still does not have his amended complaint on file. As Defendant previously pointed out, Plaintiff's counsel has engaged in "blatant disregard of this Court's deadlines," and it is now clear to the Court that at least some of counsel's "purported reasons for the delay are a sham." (Doc. No. 33 at 6.) The Court will address each attorney's conduct, separately.

## I.  Aszanneé R. Laws

Ms. Laws is a first-year California-licensed attorney[1] who has now parted ways with Mr. Pierce's firm. (*See* Doc. No. 49.) In her response to the Court's Order to Show Cause, Ms. Laws "respectfully requests that the Court not sanction" her because she "was never supposed to be the lead attorney on this case," and prior to "the scheduling conference, [she] informed the firm that [she] would be parting ways." (Doc. No. 45 at 1.) She says she "secured a full-time position on April 24, 2023," presumably with an employer other than Mr. Pierce, "and put the firm on notice that [she] would only be able to pick up work as [her] schedule permits." (*Id.*) She goes on to state that "between April 24, 2023 and May 10, 2023 no one had been admitted," and that, "against [her] better judgment [she] had to attend the scheduling conference." (*Id.* at 2.) She says that "[a]fter the scheduling conference [she] again informed the firm that due to … having a fulltime job and [her] intentions to fully part ways with the firm … someone would need to be admitted to attend the [motion to amend] hearing [scheduled for June 6, 2023]." (*Id.*) She thought Mr. Pierce's firm would handle it, and she therefore focused her efforts elsewhere. (*Id.*)

---

[1] *Aszaneé R. Laws #348312*, THE STATE BAR OF CALIFORNIA, https://apps.calbar.ca.gov/attorney/Licensee/Detail/348312 (accessed July 18, 2023).

However, at the "last minute [she] became aware that no one from the firm had gotten admitted and the hearing would again fall on [her]." (*Id.*) Ms. Laws claims she "panicked and filed an emergency continuance." (*Id.*) She admits she used a motion from "a prior case,"[2] and she admits that she "failed to ensure that the [request for] continuance was complete, accurate, and that it made sense to the court." (*Id.*)

Ms. Laws downplays her decision by referencing her own urgent care visit a few days before the hearing. She says she used a continuance motion filed in a prior case "because not only did I experience the same symptoms, but I also went to urgent care a few days before the hearing." (*Id.* at 2.) However, Ms. Laws does not submit proof of her urgent care visit (despite the Court's mandate that proof be included in response to the Order to Show Cause). Without proof, the Court is left to wonder whether that statement is truthful. In any event, and even assuming Ms. Laws did indeed visit urgent care a few days earlier, it does not change the fact that a motion for a continuance was filed less than 30 minutes before a hearing, the alleged facts were not verified, and the motion was ultimately misleading.

Ms. Laws closes by stating that even though she "inform[ed] the firm on several occasions to have someone admitted to take over the case…it ultimately fell on me and I should have done everything that I could have to ensure that someone else was admitted." (*Id.* at 3.) The

---

[2] It appears the language was taken from a motion filed by Mr. Pierce in another case, in which Mr. Pierce details his symptoms. (*See* Doc. No. 46 at 5 ("It is clear that Ms. Laws used language from the May 31st motion to continue the sentencing in the *Niemela* case when she drafted the motion to continue, as the title of the document is exactly the same. The language of the motion to continue in this case also uses the exact same language with respect to my symptoms as the motion to continue in the *Niemela* motion did.").)

5

Court agrees. As the only attorney of record at the time, Ms. Laws had a duty to her client and this Court.

The Court laments that someone so new to the bar has found herself in this situation. There is some indication that Ms. Laws's supervisor, Mr. Pierce, has a history of directing ill-equipped associates to handle matters on his behalf.[3] If this is a regular practice designed to keep Mr. Pierce off the frontlines, Ms. Laws may have been caught in the middle of it before realizing what was happening. Indeed, Ms. Laws indicated to the Court that she was not supposed to be the lead attorney on this case,[4] that she was trying to separate from the firm, and that she was struggling to figure out how to separate herself from the firm while not leaving Plaintiff in a difficult position.

But Ms. Laws's inexperience, and the difficult position she found herself in, is no excuse. It does not take years of practice to know that you should not make false or misleading statements to a court. Filing a continuance request from another case about another lawyer's symptoms with vague information about the circumstances surrounding the last-minute request, was at best, misleading. The Court understands people panic when they are in a bind, but this

---

[3] David Thomas, *Defendants in U.S. Capitol Attack Have No Attorney After Lawyer Contracts COVID-19: Prosecutors*, REUTERS, (Aug. 30, 2021), https://www.reuters.com/legal/litigation/defendants-us-capitol-attack-have-no-attorney-after-lawyer-contracts-covid-19-2021-08-30/

[4] Despite her representation that she was never "lead" on this case, Ms. Laws was the only attorney of record for months and the only attorney signing pleadings and filing documents on Plaintiff's behalf. Based on court filings and her statements to this Court, it appears Ms. Laws was in over her head, taking on more than a first-year attorney should.

profession demands that we hold ourselves and each other to the highest of standards, and candor toward the tribunal is paramount in the fair administration of justice.

However, the Court does not have enough facts to assess culpability. From what the Court can glean, it appears Mr. Pierce's history could be relevant in determining whether and to what extent Ms. Laws is or is not culpable. Thus, the Court finds it appropriate to refer Ms. Laws to the Committee on Conduct. The local rules allow a judicial officer to make such a referral when it appears the attorney may have violated or attempted to violate the Standards of Professional Responsibility ("Standards"). *See* D.C.COLO.LAttyRs 6 and 7.[5] The Committee will be in a better position to investigate the facts and circumstances surrounding the representation, and determine whether and to what extent Ms. Laws bears responsibility. *See* D.C.COLO.LAttyR 6(c).

Additionally, and given that Mr. Pierce has now entered an appearance in this case, the Court grants Ms. Laws' Motion to Withdraw as Counsel. (Doc. No. 49.)

**John M. Pierce**

CRPC 5.1 imposes certain responsibilities on lawyers with supervisory authority, including the responsibility to ensure their subordinates conform to the rules of professional

---

[5] Subject to a few limited exceptions, the Standards expressly incorporate the Colorado Rules of Professional Conduct ("CRPC"). *See* D.C.COLO.LAttyR 2(a). Here, it appears Ms. Laws may have violated several Standards. For example, CRPC 1.1 requires that a lawyer provide competent representation, and CRPC 1.3 requires that a lawyer act with reasonable diligence. Additionally, pursuant to CRPC 3.3(a), a lawyer shall not knowingly make false statements to the Court, and pursuant to CRPC 8.4, it is professional misconduct for a lawyer to engage in conduct involving dishonesty, deceit, or misrepresentation. Moreover, CRPC 5.2(a) does not allow an inexperienced lawyer to take cover under the claim that he or she was acting at the direction of another. Still, without more information the Court is not in a position to reach the necessary conclusions about Ms. Laws's conduct.

conduct, as well as the responsibility of taking remedial action when necessary. Thus, to the extent Mr. Pierce supervised Ms. Laws—and it appears he did—Mr. Pierce may bear responsibility for Ms. Laws's conduct. The Court therefore refers Mr. Pierce to the Committee on Conduct, as well.

However, this does not end the Court's inquiry and analysis. The Court also considers Mr. Pierce's response, in which he explains that the "simple reality is that I have taken on too much work over the last several years." (Doc. No. 46 at 2.) Mr. Pierce describes his trial schedule as "virtually impossible[,]" and says this has resulted in a "massive strain on [his] personal health during the past couple years, as well as the financial and administrative health and stability of both [his] life and [his] law firm." (*Id.*) He also explains that because so many of his cases concern what he calls the January 6th defendants, "it has been virtually impossible to recruit lawyers and staff to assist with clients we represent whose causes are often considered extremely unpopular in the legal industry at this point in American history." (*Id.*)

Mr. Pierce goes on to explain that in May of this year he was "experiencing significant sinus and respiratory symptoms," and that "[b]y the late night of May 30th and early morning of May 31st, the symptoms had become extreme." On May 31st, Mr. Pierce visited an urgent care facility and was diagnosed with a "very serious bacterial sinus infection, likely along with bacterial bronchitis and potentially early phases of pneumonia." (*Id.* at 3.) Mr. Pierce admits that the documentation he attaches to his response only reflects a sinus infection, but he attests that the doctor gave him the additional information, verbally. (*Id.*)

Mr. Pierce explains that as a result of this illness, he was forced to request an emergency continuance of a sentencing hearing the morning of May 31st in a matter involving defendant,

Kirstyn Niemala. (*Id.*) He also explains that as he recovered over the next several days, he "was not paying attention to the calendar in this case the way [he] should have[,]" and that on June 5th he realized there was a hearing for June 6th and instructed members of his firm "to ensure the hearing was handled or that a continuance was obtained[,]" and he "mistakenly assumed that either the hearing would be conducted by Ms. Laws or a continuance would be sought well prior to 30 minutes before the hearing." (*Id.*) He says he "had no part in drafting the motion to continue and was not aware of its content prior to it being filed." (*Id.*)

The Court is troubled by Mr. Pierce's response. First, it appears Mr. Pierce and his firm are struggling to staff cases. This could impact Mr. Pierce's ability to move this matter forward diligently and competently, and that in turn could prejudice the parties. Second, Mr. Pierce seems to suggest that it is sufficient oversight to instruct members of his firm to handle a hearing. This, despite representing that everyone is stretched beyond capacity, and despite representing that he is responsible for the case. Third, Mr. Pierce's response says nothing about the firm's failure to comply with Court-ordered deadlines and applicable rules, nor does it explain why Ms. Laws was the only lawyer on this case for months even though Mr. Pierce previously represented that Plaintiff is his client. Additionally, the Court cannot overlook the fact that Mr. Pierce's firm has cost the parties and this Court an unnecessary amount of time and resources.

Under the circumstances, Defendant has leave to file a motion for reasonable fees and costs associated with any unnecessary appearances or delay attributable to Mr. Pierce's firm. Perhaps this will aptly convey the Court's concern and deter any future neglect. Additionally, the Court takes seriously Mr. Pierce's representation that he will "continue to work with the other members of [his] firm to recruit additional lawyers and staff, and to obtain the necessary funds to

9

pay for them." (Doc. No. 46 at 5.) The Court also expects that Mr. Pierce "will personally handle moving this case forward diligently to its completion." (*Id.*) And while the Court will not require Mr. Pierce to affiliate with local counsel at this time—in part to avoid additional delay—the Court expects Mr. Pierce to personally familiarize himself with all applicable rules, local rules, and practice standards for both the undersigned and the presiding judge, and it warns Mr. Pierce that failure to comply with the same is likely to result in further sanctions.

## CONCLUSION

Accordingly, it is

**ORDERED** that the Order to Show Cause (Doc. No. 44) is made **ABSOLUTE**. It is further,

**ORDERED** that Ms. Laws and Mr. Pierce shall promptly provide a copy of this Order to the Committee on Conduct of the United States District Court for the District of Colorado. It is further

**ORDERED** that Defendant is granted leave to file a motion for reasonable fees and costs associated with any unnecessary appearances or delay attributable to Mr. Pierce's firm. It is further

**ORDERED** that Mr. Pierce and his firm will carefully familiarize themselves with all applicable rules, local rules, and practice standards for both the undersigned and the presiding judge. It is further

**ORDERED** that Ms. Laws' Motion to Withdraw as Counsel (Doc. No. 49) is **GRANTED**.

Dated this 19th day of July, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge
